UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ISAAC LERNER, ELI LERNER, BALLYWARD
INVESTMENT COMPANY, LTD., JAIME
SOHACHESKI, GASTON LIMITED, HOTEL
INVESTORS, INC., PERKY LIMITED, ABRAHAM
RAPPAPORT, ESTHER RAPPAPORT, MOSHE
COHN, ESTABLISSEMENT SOMER, JOSEPH
KOHN, CHANCERY ENTERPRISES, LTD.,
ROSDEV DEVELOPMENTS, INC., AND MICHAEL
ROSENBERG,

   Plaintiffs,

 -against-

FLEET BANK, N.A., STERLING NATIONAL BANK
AND TRUST COMPANY OF NEW YORK, AND
REPUBLIC NATIONAL BANK OF NEW YORK,

   Defendants.
-----------------------------------------------------------x

**MEMORANDUM & ORDER**
**Action #1**
Case No. 98-CV-7778 (FB)

-----------------------------------------------------------x
BRUCE BAYROFF, JOSHUA GOLDSTEIN, LAND
TECH AT MANALPAN LLC, THEODORE BRODIE,
MEYER ROSENBAUM, MR ASSOCIATES LLC,
ILANA BLUMKIN, AS TRUSTEE, EMDEE TOURS,
INC., ALEXANDER HASENFELD, INC., PROFIT
SHARING RETIREMENT PLAN, HASENFELD
STEIN, INC, PENSION TRUST, AEG AGENCY,
INC., AARON GARFINKEL, RIVKA STEIN,
AARON Y. RUBINSON, STEVEN B. ROTHCHILD,
P.C. MONEY PURCHASE PLAN, PINCHOS
RUBINSON, AKIVA LEIMAN, ESTATE OF
BORUCH RUBINSON, CHAIM AND RACHEL
LEKOWITZ, NAFTALI AND SARAH LIPSHUTZ,
MENDEL AND FEIGY LIPSCHUTZ, REISEL
BERGSTEIN, MICHAEL KONIG, ESTHER
WERTENTEIL, AARON WERTENTEIL, TEENA
RUBINFELD, MARK WERTENTEIL, MORRIS AND
SARAH FRIEDMAN, THE REGAL TRADE, S.A.,
VAVEL CORP., CHADWICK FUNDING CO. L.P.,

**Action #2**
Case No. 98-CV-7779 (FB)

ALLEN SAUSEN AND LEONARD SAUSEN,
D/B/A ATASSCO, KEREN HACHESED OF
MONSEY, INC., GENEVA PROPERTIES, L.L.C., MT.
PLEASANT PARTNERS, HERSCEL KULEFSKY,
ALBERT DAVID PEARLS & GEMS, INC., DEFINED
BENEFIT PENSION PLAN, CHAI PROPERTIES
CORP., ARTHUR KURTZ, CRESFIELD
ASSOCIATES, INC., WEINREB MANAGEMENT
AND HOWARD MERMELSTEIN,

              Plaintiffs,

-against-

FLEET BANK, N.A., STERLING NATIONAL BANK
AND TRUST COMPANY OF NEW YORK, AND
REPUBLIC NATIONAL BANK OF NEW YORK,

              Defendants.
----------------------------------------------------------------x

*Appearances:*
*For Plaintiffs:*
JAMES B. ZANE, ESQ.
EDWARD S. RUDOFSKY, ESQ.
ERIC S. HORWITZ, ESQ.
Zane & Rudofsky
Carnegie Hall Tower
152 West 57th Street
New York, NY 10019

*For Defendant Fleet Bank:*
THOMAS J. MALONEY, ESQ.
DAVID RUSH, ESQ.
Cleary, Gottlieb, Steen & Hamilton
One Liberty Plaza
New York, NY 10006

*For Defendant Sterling National Bank:*
ALLEN C. WASSERMAN, ESQ.
R. JAMES DEROSE III, ESQ.
Lord, Bissell & Brook LLP
885 Third Avenue, 26th Floor
New York, NY 10022

*For Defendant Republic National Bank:*
CELIA G. BARENHOLTZ, ESQ.
CHAYA F. WEINBERG-BRODT, ESQ.
RYAN PAPIR, ESQ.
Kronish, Lieb, Weiner & Hellman LLP
1114 Avenue of the Americas
New York, NY 10036

**BLOCK, District Judge:**

Plaintiffs in two companion actions are investors who were defrauded into giving millions of dollars to David Schick ("Schick"), an attorney and businessman; Schick deposited a portion of those funds into escrow accounts held by defendants Fleet Bank, N.A., Sterling National Bank and Trust Company of New York, and Republic National Bank of New York (collectively "defendants" or "banks"), and thereafter drew numerous checks from those accounts at times when there were insufficient funds to cover the checks. Plaintiffs claim that defendants are liable for plaintiffs' losses because they failed to report the bounced checks to the Lawyers' Fund for Client Protection of the State of New York ("Lawyers' Fund"). Plaintiffs contend that, as a result, Schick was permitted to perpetuate his scheme for a protracted period of time; i.e., had the banks reported the insufficient funds, Schick's fraudulent scheme would have been revealed earlier and plaintiffs' losses would have been curtailed.

Initially, the plaintiffs in both actions raised Racketeer Influenced and Corrupt Organizations Act ("RICO") and state-law claims. The Court dismissed plaintiffs' RICO claims for lack of standing and declined to exercise supplemental jurisdiction over the state-law claims. *See Lerner v. Fleet Bank, N.A.*, 146 F. Supp. 2d 224, 226, 231 (E.D.N.Y. 2001). The Second Circuit affirmed the dismissal of the RICO claims but vacated the Court's declination to exercise supplemental jurisdiction. *See Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 117, 124-25 (2d Cir. 2003). It explained that the plaintiffs in Action 1 were diverse from the defendants; thus diversity jurisdiction provided an independent basis for subject

3

matter jurisdiction, and the circuit court advised that although there was no diversity jurisdiction in Action 2, "judicial economy might best be served by exercising supplemental jurisdiction over the [Action 2] state-law claims" "[b]ecause the district court must adjudicate identical issues in [Action 1] . . . ." *Id.* at 124-25, 130. At a status conference held on June 18, 2003, the Court made a determination to exercise supplemental jurisdiction over the state-law claims in Action 2 and consolidated the two Actions. *See* Docket No. 65.

Thereafter, the plaintiffs in both actions filed a combined Second Amended Complaint, alleging the following state-law claims: negligence, fraud, breach of fiduciary duty, aiding and abetting Schick's breach of fiduciary duty, and commercial bad faith. Defendants now each move to dismiss all of these claims pursuant to Rule 12(b)(6). For the reasons set forth below, defendants' motions are granted.

## BACKGROUND

The following sets forth the pertinent facts, which are taken from the Second Amended Complaint.

### A. Schick's Scheme

> In 1992 Schick began marketing investment opportunities based upon mortgage flip transactions. Schick's "original intentions were good" and "his modus operandi was not criminal;" however, due to "unrelated losses stemming from a 1988 'problem' which came back to 'haunt' him," he began to use fraudulent means to stay afloat. [Second] Am. Compl. ¶ 3. The essence of Schick's scheme to defraud was the marketing of risk-free investments with high, short-term yields. In this regard, Schick purported to bid on distressed mortgage pools at auctions and sales conducted by the Resolution Trust Company, Federal Deposit Insurance Corporation, and other banking institutions. Schick explained to prospective investors

4

that after being awarded a bid to purchase a mortgage pool subject to at least a ninety-day due diligence, he could re-sell the same pool to a "take-out buyer" for a substantial profit (between twelve and twenty percent), subject to a due diligence period of fewer than ninety days. [*Id.* ¶ 141]. Schick assured them that if the take-out buyer declined to purchase the pool, Schick could rescind the original purchase within his own ninety-day due diligence window, thus avoiding any risk of loss.

However, Schick told the putative investors that in order to close on a bid he was required to deposit substantial sums of cash as evidence of his ability to complete the purchase. Schick misrepresented to the investors that their investments would be protected in escrow accounts covered by restrictive provisions during the due diligence period, including a requirement that funds could not be withdrawn without the signature of plaintiffs' representative. Using these fraudulent promises as well as his status in the community, Schick successfully induced numerous individuals and entities to invest millions of dollars.

*Lerner*, 146 F. Supp. 2d at 226.[1]

## B. Governing New York Regulations Regarding Attorney Escrow Accounts

Several regulations govern the responsibilities and obligations of attorneys maintaining attorney escrow accounts and the banking institutions within which they are maintained. In particular, pursuant to Disciplinary Rule 9-102(B) of the Code of Professional Responsibility ("DR 9-102(B)"), as codified at 22 N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") § 1200.46, attorneys may not misappropriate client funds and must maintain those funds in separate accounts. As the rule states:

---

[1] Although *Lerner*, 146 F. Supp. 2d at 226, was based on the plaintiffs' First Amended Complaint, these facts are also set forth in the Second Amended Complaint. Unless noted otherwise in brackets, the quoted language and citations did not change between the First and the Second Amended Complaint.

> (1) A lawyer who is in possession of funds belonging to another person incident to the lawyer's practice of law, shall maintain such funds in a banking institution within the State of New York which agrees to provide dishonored check reports in accordance with the provisions of Part 1300 of the joint rules of the Appellate Divisions. Banking institution means a state or national bank, trust company, savings bank, savings and loan association or credit union. Such funds shall be maintained, in the lawyer's own name, or in the name of a firm of lawyers of which he or she is a member, or in the name of the lawyer or firm of lawyers of whom he or she is employed, in a special account or accounts, separate from any business or personal accounts of the lawyer or lawyer's firm, and separate from any accounts which the lawyer may maintain as executor, guardian, trustee or receiver, or in any other fiduciary capacity, into which special account or accounts all funds held in escrow or otherwise entrusted to the lawyer or firm shall be deposited.
>
> (2) A lawyer or the lawyer's firm shall identify the special bank account or accounts required by paragraph (1) of this subdivision as an "Attorney Special Account," or "Attorney Trust Account," or "Attorney Escrow Account," and shall obtain checks and deposit slips that bear such title. Such Title may be accompanied by such other descriptive language as the lawyer may deem appropriate, provided that such additional language distinguishes such special account or accounts from other bank accounts that are maintained by the lawyer or the lawyer's firm.

Attorneys who misuse escrow accounts are subject to disciplinary proceedings. *See* 22 N.Y.C.R.R. 1200.46(h).

Furthermore, pursuant to the Dishonored Check Reporting Rules For Attorney Special, Trust and Escrow Accounts:

> (a) Special bank accounts required by [22 N.Y.C.R.R. § 1200.46] shall be maintained only in banking institutions which have agreed to provide dishonored check reports in accordance with the provisions of this section.

> (b) An agreement to provide dishonored check reports shall be filed with the Lawyer's Fund for Client Protection, which shall maintain a central registry of all banking institutions which have been approved in accordance with this section, and the current status of such agreement.
>
> (c) A dishonored check report by a banking institution shall be required whenever a properly payable instrument is presented against an attorney special, trust or escrow account which contains insufficient available funds, and the banking institution dishonors the instrument for that reason.
>
> \* \* \*
>
> (h) Every lawyer admitted to the Bar of the State of New York shall be deemed to have consented to the dishonored check reporting requirements of this section. Lawyers and law firms shall promptly notify their banking institutions of existing or new attorney special, trust or escrow accounts for the purpose of facilitating the implementation and administration of the provisions of this section.

22 N.Y.C.R.R. § 1300.1.

Each defendant is a banking institution as defined by the regulations, and each defendant has entered into a dishonored check reporting agreement with the Lawyers' Fund.

After a banking institution submits a dishonored check report to the Lawyers' Fund, the Lawyers' Fund "holds [it] for ten business days," and then "forward[s] it to the attorney disciplinary committee for the judicial department or district having jurisdiction over the account holder." 22 N.Y.C.R.R. § 1300.1(f)-(g). Upon receiving a dishonored check report, the applicable attorney disciplinary committee "in virtually all cases compels the involved attorney to produce the records of the account on which the dishonored check is

7

drawn[,]" and "[i]n serious cases involving failure on the part of the attorney to cooperate in the investigation, or involving numerous 'bounced checks, or large amounts of money, the [applicable disciplinary committee] seeks immediate temporary suspension of the attorney." *Id.* ¶¶ 93 - 94.

## C. Bounced Checks

Schick maintained several accounts with the defendant banks that were designated as "attorney-at-law", "escrow", "trust" and "special" accounts; Schick also maintained accounts designated as "attorney at law", "which [defendants] knew were being used by Schick to maintain funds belonging to other person(s) and which he possessed incident to his practice of law[.]" *Id.* ¶ 113. Over the course of three years, Schick drew numerous checks from all of those accounts at times when there were insufficient funds to cover the checks.

Schick informed the defendants "that outstanding checks drawn on such accounts 'had' to be covered because the funds involved were the property of others and dishonor of the checks would ... result in Schick's own scheme being exposed." *Id.* ¶ 114. The banks honored some of the checks despite the insufficient funds and dishonored others; the banks returned to the payees the dishonored checks with the designation "insufficient funds" or "refer to maker." Because "each defendant knew that reporting the [bounced checks] would result in" Schick closing his bank accounts, the defendants never reported a single bounced check from Schick's accounts to the Lawyers' Fund. *Id.* ¶ 128.

"'[B]ut for' defendants' fraud and its corruption of the 'New York State Attorney Disciplinary System,' Schick's financial defalcations would have been discovered had defendants timely made the required reporting to the Lawyers' Fund, which would have resulted in Schick's immediate suspension and/or disbarment before plaintiffs entrusted their funds with him and/or the funds were misappropriated and/or plaintiffs suffered damages." *Id.* ¶ 12.

## DISCUSSION

A court may dismiss an action pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)") only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] will entitle him to relief." *Todd v. Exxon Corp.*, 275 F.3d 191, 197-98 (2d Cir. 2001). The Court accepts as true a plaintiff's factual allegations and draws all reasonable inferences in favor of the non-moving party. *See Board of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 479 (2d Cir. 2002).

### A. Breach of Fiduciary Duty

Plaintiffs' claims for breach of fiduciary duty cannot survive because defendants do not owe a fiduciary duty to the plaintiffs. "In maintaining an [escrow account ], the lawyer, not the bank, is charged with a fiduciary duty to the client." *Peoples Westchester Sav. Bank v. FDIC*, 961 F.2d 327, 332 (2d Cir. 1992).

## B. The Remaining Claims

The remaining claims also cannot survive because each requires proximate causation, and, as a matter of law, plaintiffs cannot establish that defendants' actions proximately caused their injuries.

### 1. Proximate Causation is an Element of Each Claim

#### a. Negligence

"To establish a prima facie case of negligence under New York law, three elements must be demonstrated: (1) the defendant owed the plaintiff a cognizable duty of care as a matter of law; (2) the defendant breached that duty; and (3) plaintiff suffered damage as a proximate result of that breach." *See Curley v. AMR Corp.*, 153 F.3d 5, 13 (2d Cir. 1998).

#### b. Fraud

"To prevail on a fraud claim under New York law, a plaintiff must establish five elements by clear and convincing evidence: 1) the defendant made a material misrepresentation; 2) the defendant knew of its falsity; 3) the defendant possessed an intent to defraud; 4) the plaintiff reasonably relied on the misrepresentation; and 5) the plaintiff suffered damage as a result of the misrepresentation." *Kaye v. Grossman*, 202 F.3d 611, 614 (2d Cir. 2000).

In regard to the fourth element, reasonable reliance, "[r]eliance is to fraud what proximate cause is to negligence . . . ." *In re Fifth Judicial Dist. Asbestos Litigation*, 784

N.Y.S.2d 829, 833 (N.Y. Sup. Ct. 2004) (citing *Brackett v. Griswold*, 112 N.Y. 454 (1889)). In *Brackett v. Griswold*, the New York Court of Appeals explained:

> [I]n order to recover in an action for fraud and deceit, the fraud and injury must be connected. The one must bear to the other the relation of cause and effect; . . . it must appear in an appreciable sense that the damage flowed from the fraud as the proximate, and not the remote, cause.

112 N.Y. at 469. "It is not necessary for the representation to have been the exclusive cause of plaintiff's action or non-action; it is sufficient that . . . the representation was a *substantial factor* in inducing plaintiff to act or refrain from acting." *In re Fifth Judicial Dist. Asbestos Litigation*, 784 N.Y.S.2d at 833 (emphasis added); *see also National Union Fire Ins. Co. of Pittsburgh, Pa. v. Robert Christopher Assocs.*, 691 N.Y.S.2d 35, 42 (1st Dep't 1999) ("[T]he fraudulent conduct must be related to the resultant damages in order to satisfy the requirement of proximate causation."); Restatement, Second, Torts § 548. Thus, proximate cause, although set forth in a slightly different manner, is also an element of a fraud claim.

### c. Aiding and Abetting Breach of Fiduciary Duty

To establish a claim for aiding and abetting breach of a fiduciary duty owed by Schick to the plaintiffs, the following three elements must be established.

> The first element is a breach by a fiduciary of obligations to another, of which the aider and abettor had actual knowledge. The second element is that the defendant knowingly induced or participated in the breach; and the third element is that plaintiff suffered damage as a result of the breach.

*In re Sharp Intern. Corp.*, 403 F.3d 43, 49 (2d Cir. 2005) (internal citations and quotations omitted).

In regard to the second element, because Plaintiffs' Second Amended Complaint does not allege any type of inducement, plaintiffs must establish that the banks knowingly participated in Schick's breach. "A person knowingly participates in a breach of fiduciary duty only when he or she provides substantial assistance to the primary violator[,]" *In re Sharp Intern. Corp.*, 403 F.3d at 50-51 (internal citations and quotations omitted), which "requires a defendant's participation to be the proximate cause of plaintiff's injury." *Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp. 2d 158, 167 (S.D.N.Y. 2003).

### 4. Commercial Bad Faith

Under New York law, a claim for commercial bad faith requires (1) "allegations of a scheme or acts of wrongdoing," (2) "allegations of the bank's actual knowledge of the scheme or wrongdoing that amounts to bad faith or allegations of complicity by bank principals in alleged confederation with the wrongdoers[,]" *Peck v. Chase Manhattan Bank, N.A.*, 593 N.Y.S.2d 509, 510-11 (1st Dep't 1993) (citing *Prudential-Bache Sec., Inc. v. Citibank, N.A.*, 73 N.Y.2d 263, 275-77 (1989)), and (3) that plaintiffs' damages were proximately caused by bad faith on the part of the defendants. *See Dubai Islamic Bank*, 256 F. Supp. 2d at 167 (commercial bad faith claims, like breach of fiduciary duty and fraud, require proximate causation).

### 2. Plaintiffs Cannot Establish Proximate Causation As A Matter of Law

"To satisfy th[e proximate-cause] element, a plaintiff must establish that the defendant[s'] [conduct] was a substantial foreseeable factor in bringing about his or her

12

injury." *Johnson v. Bryco Arms*, 304 F. Supp. 2d 383, 395 (E.D.N.Y. 2004) (citing *Nallan v. Helmsley-Spear, Inc.*, 50 N.Y.2d 507, 520 . . . (1980); *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 315 . . . (1980)). Although "[t]he issue of proximate cause is generally a question of fact for the jury," when "only one conclusion may be drawn from the established facts . . . the question of legal cause may be decided as a matter of law." *Johnson*, 304 F. Supp. 2d at 385 (citing *Alexander v. Eldred*, 63 N.Y.2d 460, 468 . . . (1984)).

In regard to plaintiffs' RICO claims, which were based on the same conduct underlying the claims in the Second Amended Complaint, the Second Circuit, in affirming the Court's dismissal of the RICO claims, held that "the alleged pattern of activity was not the proximate cause of plaintiffs' injuries[.]" *Lerner*, 318 F.3d at 117. The Second Circuit explained:

> [T]o the extent that plaintiffs' complaint can be read to allege that defendants engaged in a pattern of racketeering activity that led to the concealment of Schick's improper conduct from the Lawyer's Fund, the connection between the RICO violation and the injury alleged is too attenuated to satisfy the proximate cause requirement. . . . Central to the notion of proximate cause is the idea that a person is not liable to all those who may have been injured by his conduct, but only to those with respect to whom his acts were a substantial factor in the sequence of responsible causation, and whose injury was reasonably foreseeable or anticipated as a natural consequence. The racketeering activities alleged are not a substantial factor in the chain of causation that led to plaintiffs' losses. Nor were those losses a reasonably foreseeable consequence of that conduct.
>
> The mere recitation of the chain of causation alleged by the plaintiffs is perhaps the best explanation of why [there is no proximate cause]. In order to demonstrate some link between the RICO violations alleged and the loss of their investments,

> plaintiffs must show that, if the defendant banks had not committed the predicate acts of mail and wire fraud, (1) unspecified third parties would have become aware that there were insufficient funds in the escrow accounts to cover Schick's checks; (2) the Lawyer's Fund, in some fashion, would then have become aware of these bounced checks; (3) the [applicable attorney disciplinary committee], upon receiving the report of dishonored checks from the Lawyer's Fund, would have recommended to the Appellate Division that Schick be suspended or disbarred; (4) the Appellate Division would have investigated Schick and adopted this recommendation almost immediately after Schick bounced these checks; and (5) plaintiffs would have been made aware of Schick's removal from the practice of law in time to halt further investments. Each of the assumptions upon which this theory rests is inherently speculative. For example, it would be impossible to determine if and when the Appellate Division would have disciplined Schick. Thus, there is no rational way to allocate the damages that flow from the failure of the Appellate Division to act.

*Id.* at 123-24.

There is no principled distinction between the basis for dismissing the RICO claims on proximate-causation grounds and the basis for similarly dismissing the state claims requiring proximate causation. The plaintiffs do not argue that they have established proximate causation; rather, they contend that there is a causal connection between the defendants' conducts and their injuries. A causal connection, however, only establishes that "but for" defendants' actions the plaintiffs would not have been incurred their injuries; by contrast, proximate causation requires an additional step – that defendants' actions were a substantial factor in plaintiff's injuries and that those injuries were reasonably foreseeable to the defendants; thus, even if plaintiffs could establish but-for causation, that is not sufficient to establish proximate causation. *See Allegheny Gen.*

*Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 439 (3d Cir. 2000) ("[W]hile a causal connection is necessary for a finding of proximate cause, it is not sufficient by itself.").

## CONCLUSION

Defendants' motions to dismiss are granted. Accordingly, the Second Amended Complaint is dismissed.

**SO ORDERED.**

FREDERIC BLOCK
United States District Judge

Dated: Brooklyn, New York
August 26, 2005